UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRINC, INC., a Michigan corporation,
and PIERRE J. AUGIER, a Michigan
resident,

    Plaintiffs,

Case Number: 07-12488

v.

DISTRICT JUDGE JOHN FEIKENS
MAGISTRATE JUDGE STEVEN D. PEPE

RADIAL WHEEL, LLC, a Georgia
limited liability company, CLEMENT
O. DENNIS, a Georgia resident, and
STEPHEN R. GROSS, a Georgia resident,

    Defendants.

_____

**REPORT AND RECOMMENDATION GRANTING DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. #25)**

On August 19, 2008, Defendants filed a Motion for Partial Summary Judgment on Counts I, II and III of Plaintiffs Complaint (Dkt. #25). All pre-trial matters have been referred in accordance with the authority conferred under 28 U.S.C. § 636(b) (Dkt. #34). On October 29, 2008, a hearing was held on this motion at which time all unresolved issues were addressed. At that hearing, it was determined that supplemental briefing would be needed on Plaintiffs' rebuttal of Defendants' arguments concerning Count III of the Complaint. Specifically, on or before December 5, 2008, Plaintiffs were ordered to file a supplemental brief not to exceed 10 pages, which discusses their claims of unjust enrichment that occurred both before and after Trinc terminated Defendants' rights, to the extent any ever existed, on July 18, 2006. Defendants were ordered to file a response to Plaintiffs' supplemental brief within 10 days of Plaintiffs' submission.

1

Plaintiffs' supplemental brief was filed on December 5, 2008 (Dkt. #47). Defendants filed their response on December 19, 2008 (Dkt. #50). The Court has reviewed all filings and fully considered the arguments heard at the October 29, 2008, hearing on this matter. For the reasons stated on the record and indicated below, **IT IS RECOMMENDED** that Defendants' Motion be **GRANTED**.

**I. BACKGROUND**

Plaintiff Pierre Augier is a Michigan resident and serves as the President and CEO of Trinc, a Michigan Company. Defendants Clement Dennis and Stephen Gross are Georgia residents. In February 2001, Dennis called Augier to discuss the tragic accident that took the life of NASCAR driver Dale Earnhardt, Sr., and to ask whether Augier thought such accidents could be prevented by advancements in tire technology. Augier researched the issue and eventually filed a patent application on technology that he developed as part of his research. Augier filed his patent application through Trinc, and, in May of 2003, Trinc was granted U.S. Patent No. 6,568,765 (the "'765 Patent") for a "Composite wheel having a shallow rim" (Dkt. #5, Ex. A).

After the patent application was filed, Augier and Dennis began to discuss forming a company to build prototypes and market the '765 Patent technology. Dennis introduced Gross to Augier because Gross (a CPA) had experience in leading start-up companies and expertise in managing the administrative efforts of the company. They formed a company in 2003 known as Radial Wheel, LLC., a Georgia limited liability company (Dkt. #5, Ex. B).

In August of 2004, Augier, Dennis and Gross negotiated and entered into a patent licensing agreement between Trinc and Radial Wheel (Dkt. #5, Ex. C). Trinc granted Radial Wheel an exclusive license to use '765 Patent and Radial Wheel agreed to pay Trinc $12,000 a

month for the life of the agreement. Disagreements between the parties on the issue of payment led Radial Wheel and Trinc to enter into an addendum to the first agreement (Dkt. #5, Ex. D) and later to replace the first agreement with a second licensing agreement (Dkt. #5, Ex. E).

The first attempt to manufacturer a prototype tire took place at Denman Tire Company ("Denman") in December of 2005 (Dkt. #7, Ex. A, ¶ 7). It was unsuccessful and shortly thereafter, Augier agreed that he would personally supervise every aspect of a second attempt at Denman to manufacture the prototype (*id.* at ¶ 8). Augier partially fulfilled his agreement by supervising some of the manufacturing process at Denman's Ohio plant in the spring of 2006, but failed to attend all of the process and was not present at some of the most critical stages. Defendants assert that this effort was also unsuccessful. Denman called Augier to schedule yet another manufacturing effort, but Augier did not return the calls (*id.*).

On July 18, 2006, Augier's attorney terminated the "Patent Licensing Agreement" for non-payment, revoking Radial Wheel's right to further use the patent in manufacturing prototype tires or wheels (Dkt. #5, ¶ 33). Thereafter, Defendants contend that neither Radial Wheel, Dennis, nor Gross manufactured anymore prototype tires or wheels using the patent design, and no Defendant took any steps to sell, market or use the existing (defective) prototype tires or wheels (Dkt. #25, Ex. B, ¶¶ 6-12).

The parties continued trying to resolve their differences and met at Mr. Augier's attorney's office on July 20, 2006, in Detroit, Michigan. No agreement was reached (Dkt. #7, Ex. A, ¶¶ 22-25).

After the meeting in Detroit, the parties continued communicating. On April 3, 2007, Gross, Dennis and Augier met in Atlanta for the specific purpose of resolving their differences

and agreeing on a future plan of action for Radial Wheel (*id.* at ¶ 30). Gross and Dennis felt that they reached a clear understanding at the meeting and, after Augier returned to Detroit, Steve Gross summarized the agreement in a short letter dated April 6, 2007 (Dkt. #7, Ex. #21). Paragraph 3 of Gross' letter stated that the parties had agreed that Trinc would assign to Radial Wheel the TRIG '765 Patent which is the subject of this litigation and would pay for it over time out of earnings. Paragraph 1 stated that Radial Wheel would enter into a "Consulting Agreement" with Augier at $6,000.00 per month and that part of his duties would be to meet with Denman and do everything necessary to finalize a successful prototype tire.

When he received this letter, Augier responded with a lengthy letter disputing the agreement (Dkt. #7, Ex. A, ¶ 33). At that point in time, Augier was no longer represented by counsel, and counsel for Gross and Dennis communicated directly with Augier during May and June of 2007 in further efforts to resolve the dispute. Once Augier engaged his present counsel, counsel for Gross and Dennis wrote them on June 14, 2007, explaining the background, citing the details of the April 3, 2007 meeting (*id.* at ¶ 34-38).

On July 12, 2007, Radial Wheel negotiated an "Agreement of Intent" with Rosava Company (hereinafter referred to as "Rosava") located in the Ukraine. Defendants state this was a non-binding "Letter of Intent" and was designed to get the agreement of Rosava to enter into a more binding and definite agreement in the future (Dkt. #25, Ex. B, ¶ 13). When this document was signed, Defendants indicate that it was the expectation and hope of Radial Wheel that the dispute between Plaintiffs and Defendants could be resolved so that Radial Wheel would have ownership or permission to use the '765 Patent in order to move forward with the final agreement with Rosava. Yet, this never happened and Defendants claim that neither Radial

4

Wheel, Gross nor Dennis ever took any further steps in connection with the non-binding "Letter of Intent" (*id.* at ¶ 15-16). Defendants state that at the time a Letter of Intent was negotiated, Dennis and Gross were unaware that Augier had filed the present suit in Michigan on June 11, 2007 (Dkt. #7, Ex. A, ¶ 40).

Defendants further contend that all of the actions taken by Dennis and Gross were taken on behalf of Radial Wheel within the scope of their duties as representatives of Radial Wheel (Dkt. #25, Ex. B, ¶ 6). Dennis and Gross indicate they received no payment, financial benefit or anything of value under the patent licensing agreement (*id.* at ¶ 4).

An Amended Complaint was filed on October 3, 2007 (Dkt. #5) which sets out four counts. Count IV is a request for declaratory relief and does not appear to seek damages, costs or attorneys fees. The first three counts respectively are as follows: (1) Count I – Breach of Contract; (2) Count II – Patent Infringement; and (3) Count III - Unjust Enrichment. As noted above, Defendants seek partial summary judgment on Counts I, II and III of Plaintiffs' Amended Complaint.

**II     ANALYSIS**

    **A.     Legal Standard**

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz*

*v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Factual Analysis

#### (1) Count I — Breach of Contact

While Count I of the Amended Complaint (Dkt. #5) does not appear to assert a contract claim against either Gross or Dennis, Mr. Augier testified differently in his deposition. Count I seeks to recover $272,500.00 under the patent licensing agreement (Dkt. #5, ¶ 48). In his deposition, Mr. Augier testified that both Dennis and Gross were liable to him or to Trinc for this amount (Dkt. #25, Ex. A, pp. 30-33). Although Mr. Augier's testimony was a bit confusing,

he seemed to be asserting that the $272,500 was owed by Dennis and Gross.

It is basic law in Georgia and Michigan that a member of a limited liability company (an LLC.) is not liable for the debts or obligations of the LLC simply because of being a member. For example, M.C.L.A. § 450.4501(3) reads as follows:

> Unless otherwise provided by law or in an operating agreement, a person who is a member or manager, or both, of a limited liability company is not liable for the acts, debts, or obligations of the limited liability company.

The same rule is found in Georgia statutes at O.C.G.A. § 14-11-103 (2001). While there is an exception to this rule where the owners of a corporation (or LLC) have been guilty of fraud or other inequitable conduct so as to allow a court to pierce the corporate existence, *see Klager v. Robert Meyer Company*, 329 N.W.2d 721, 725 (Mich. 1981), Plaintiffs have failed to make sufficient assertions that they are entitled to "pierce" the limited liability protections of Radial Wheel so as to pursue either Dennis or Gross.

Additionally, the law is clear that "where [an] agent acts within the bounds of authority conferred by a disclosed principal, he does not thereby render himself personally liable on contracts made on behalf of his principal." *See Brusslan v. Larsen*, 6 Mich. App. 681, 686; 150 N.W.2d 525 (1967). Because Plaintiffs assert that $272,500 is recoverable under the express written contract between Trinc and Radial Wheel, it is clear that neither Gross nor Dennis have any liability thereunder. Neither signed the document in an individual capacity, and in fact, Dennis' name does not appear at all on the document.

### (2) Count II – Patent Infringement

Count II appears to assert that all Defendants engaged in infringement. Factually this has

no support in the record. The only wheel and tires manufactured utilizing the TRIG patent were the wheel and defective tires manufactured during late 2005 and early 2006. This was during the time that Radial Wheel was authorized under the patent licensing agreement to manufacture the '765 Patent tire. After the patent licensing agreement was terminated on July 18, 2006, none of the Defendants made any other products using the patent design. Moreover, none of the Defendants used or sold any of the existing products.

Under 35 U.S.C. § 271, three types of patent infringement are recognized. All are asserted in this case. Direct infringement is found in subsection (a), and requires proof that a defendant has made, used, offered to sell or sold a patent invention within the United States without authority. Subsection (b) recognizes a cause of action for inducement. Essentially where a person "induces" a third person to infringe, the inducer may be liable. Finally, subsection (c) recognizes a theory for "contributory" infringement where a person sells or offers to sell or imports into the United States a component of a patented product, knowing that the component was specially adapted for infringement of the overall patent. While the Amended Complaint seems to allege all three (Dkt. #5, ¶¶ 55-56), subsection (c) is clearly not applicable to the facts of this case. There was never a "component" of the '765 Patent or any other product which Plaintiffs alleged to have violated their '765 Patent.

"Threatened patent infringement" does not state a claim under 35 U.S.C. § 271. *See Lang v. Pacific Marine and Supply Company, LTD*, 895 F.2d 761, 765 (Fed. Cir. 1990). *See also, Kersavage v. United States*, 36 Fed. Cl. 441, 452 (1996). Moreover, in direct infringement claims, a product is not deemed to be "made" so as to come in to the realm of patent infringement until it reaches a state of final operable assembly. *See Lang v. Pacific Marine and*

8

*Supply Company, LTD*, 703 F. Supp. 1404, 1409-1410 (1989) (holding that there was no direct infringement because the product which allegedly infringed upon the plaintiff's patent was incomplete). In the *Lang* case, the court also noted that where there is no "direct infringement," the "defendants cannot contributorily infringe . . . " *Id*. at 1410. "Direct infringement" under 35 U.S.C. § 271(a) requires three elements: (1) an invention must be made, used or sold, (2) during the term of the patent, and (3) by one without authority to do so. *See Systematic Tool & Machine Company v. Walter Kidde & Company, Inc*., 390 F. Supp. 178, 198 (1975).

"Inducement of infringement" under 35 U.S.C. § 271(b) also requires the existence of direct infringement. *See Novartis Pharmaceuticals Corporation v. Eon Labs Manufacturing, Inc*., 234 F. Supp 464, 467 (Del. 2002). Finally, corporate officers and employers working within the scope of their authority are not personally liable where infringement is proved unless they act willfully and knowingly participate in, induce or approve of the acts of infringement. *See Art Metal Works v. Henry Lederer & Bro*., 36 F.2d 267 (S.D.N.Y. 1929) and *Bewal, Inc. v. Minnesota Min. and Mfg. Co.*, 292 F.2d 159 (10th Cir. 1961).

The record in this case is clear that there was never any successful prototype tire. Moreover, the few tires that were manufactured by Radial Wheel's efforts were during a time when Radial Wheel was licensed under the '765 Patent licensing agreement to do so. There is no evidence that any of the Defendants have ever sold any of the defective tires or offered to sell any of the defective tires or wheels. Instead, the Defendants indicate that they have consistently attempted to work out some sort of an arrangement with Augier under which he would not only reinstate the patent licensing agreement or sell the patent to Radial Wheel, but would also assist Radial Wheel in pursuing the successful manufacture and testing of a prototype tire.

The July 12, 2007, "Agreement of Intent" with Rosava does not change this fact (Dkt. #33, Ex. C). Paragraph 1 of the Agreement explains that Radial Wheel would "work with Rosava in making of a prototype, <u>on terms to be negotiated</u>" (emphasis added). Paragraph 2 states that Rosava would assist in building a prototype in accordance with documentation to be provided by Radial Wheel. Rosava was given the option to purchase 20% of Radial Wheel "on terms to be agreed upon." Under paragraph 3, Radial Wheel was to own any prototypes. In paragraph 4, the parties agreed to "use their best efforts to negotiate and execute a definitive agreement . . ." on or before October 1, 2007. In paragraph 5, each party agreed to treat as confidential, all information received for the purpose of "evaluating the transaction contemplated . . ." under the agreement. Finally, paragraph 6 specifically stated that the document was ". . . intended only as an expression of [the parties] intention with respect to the proposed transactions described [t]here and, except as provided in the following sentence, no legally binding agreement or promise related to the matters covered in this Agreement shall come into effect until and unless a definitive written agreement or agreements embodying the understanding set forth herein are executed and delivered by the parties." The last sentence made clear that only the confidentiality provisions of paragraph 5 would be enforceable.

Under basic contract law recognized in virtually every jurisdiction, a letter of intent is nothing more than an "agreement to agree in the future," and is unenforceable. *See, e.g., Miami Heights, Lt, LLC v. Home Depot US.A., Inc*., 283 Ga. App. 779, 783 (2007). *See also Overton Apparel, Inc. v. Russell Corporation*, 264 Ga. App. 306, 263-264 (2003). These sorts of agreements are unenforceable, both because of their express terms, and because of the fact that all of the essentials of a contract are not contained in the letter of intent.

With respect to the Agreement of Intent between Rosava and Radial Wheel, at least the following essentials are missing: (l) price; (2) payment terms; (3) term of the contract; (4) specifications for making the prototype; (5) specific financial terms for Rosava to become an "exclusive" representative for marketing the tire in the Ukraine; and (6) terms under which Rosava would purchase 20% of the ownership in Radial Wheel. This was clearly not a binding agreement. Moreover, as explained in the next few paragraphs, this document cannot be considered an "offer to sell" within the meaning of 35 U.S.C. § 271(a).

The addition of the words "offer to sell" to the provisions of 35 U.S.C. § 271 (a) occurred as a result of approval of the 1994 Agreement on Trade-Related Aspects of International Property Rights. 154 U. Pa. L. Rev. 1283, 1284. The Federal Circuit has exclusive jurisdiction over an appeal from the district court when that court's jurisdiction is based, at least in part, on a claim arising under the patent laws of the United States. *See 3D Systems, Inc. v. Aarotech Laboratories, Inc*., 160 F.3d 1373,1377 (1998).[1] Part of the Federal Circuit's job is to "achieve uniformity in patent matters." *Panduit Corp. v. Allstates Plastic Mfg. Co.*, 744 F.2d 1564, 1574 (Fed. Cir. 1984).

Plaintiffs cite three cases from the Federal Circuit on pp. 7-8 of their brief in response to Defendants' motion for summary judgment (Dkt. #28, pp. 7-8). Collectively they represent the law on this issue. In *Majestec 125 LLC v. Sealift, Inc*., 2006 WL 2039984 (W.D. Mich. 2006), Judge Wendell A. Miles of the Western District of Michigan summarized and explained these cases. He first noted that an "offer to sell" has been defined as "a description of the allegedly

---

[1] Both the original as well as the Amended Complaint assert jurisdiction under the federal question provisions of 28 U.S.C. § 1331.

infringing merchandise and the price at which it can be produced." He observed further that in 2000, the Federal Circuit added to this principle in the decision of *Rotec Industries, Inc. v. Mitsubishi Corporation*, 215 F.3d 1246 (Fed. Cir. 2000), explaining that an offer to sell was to be defined "according to the norms of traditional contract analysis[,]" and further that a defendant "must communicate[] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." According to Judge Miles' summary, an "'offer to sell' must create a power of acceptance. In turn, to create a power of acceptance, the terms of the communication must include specific, definite terms." *id.* at 7. These would include quantity, time of delivery, terms of payment, etc. *Rotec* continues to be the law of the Federal Circuit. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1348 (Fed. Cir. 2007). At best, the "Agreement of Intent" was an invitation to discuss matters further and nothing more. It was not an "offer to sell" within the meaning of the statute.[2]

---

[2] Plaintiffs also argue that an offer to sell may exist even where there is not product for sale. They rely upon *Cognex Corportation v. VCode Holdings, Inc*., 2008 U.S. Dist. LEXIS 40370 (D. Minn. 2008). Yet, that case does not appear to stand for the proposition argued by Plaintiffs. First of all, the case involved a very complicated data matrix symbol reader. Secondly, the case actually considered a different code section, 35 U.S.C. § 102(b), which prohibits subsequent patenting where it is proved by an alleged infringer that the "invention" was "in public use or on sale" more than a year prior to the date of the patent. Finally, the court concluded at page 9 that it was necessary to determine whether the invention was "ready for patenting" at the time of the commercial offer for sale. This in turn required the court to " . . . determine if there was 'an invention' at the time of the sale." While the case is enormously complex, the court seemed to find that the data matrix symbol reader system was a device that "actually embodied or rendered obvious the patented invention." *Id.* at 16. In short, unlike our case, this seems to be an implicit if not express finding by the court that there was either an actual device, or a workable software system.

Here, the agreement was non-binding. Moreover, it anticipated that before any more definitive and binding agreements were reached, Radial Wheel would first resolve its disputes with the Plaintiffs and would obtain again an authorization to use the patent. This never occurred. Likewise, no binding agreements were ever formed. No attempt was ever made by Rosava or the Defendants to manufacture the tires and wheel covered by the TRIG patent. Finally, if the products had been manufactured, they would have been manufactured in the Ukraine which is outside of the purview of the United States patent laws.

At best, the July 12, 2007, Agreement of Intent amounted to the "threat" of a possible future patent infringement. This is speculative, and is not a recognized cause of action under the patent laws. Accordingly, Plaintiffs have no claim for patent infringement against any Defendant.

### (3) Count III - Unjust Enrichment

Plaintiffs clarify in their Supplemental Brief filed with the Court on December 5, 2008 (Dkt. #47, p. 1) that their theory of unjust enrichment is two-fold. Plaintiffs claim that their theory of unjust enrichment is asserted both as an alternative to their breach of express contract count (hereinafter referred to as Plaintiffs' "pre-termination claim for unjust enrichment") and as a separate theory to recover from Defendants any value received (by way of the patent) following termination of the Patent Licensing Agreement (hereinafter referred to as Plaintiffs' "post-termination claim for unjust enrichment").

As to this first claim of unjust enrichment, Plaintiffs claim that "Radial Wheel has never admitted the validity of the agreement between Trinc and Radial Wheel, and Radial Wheel has even asserted that the agreement is void and/or voidable" (*id.*). This is inaccurate. In

Defendants' September 16, 2008, reply brief, counsel stated at p. 2: "We do not contend this contract is void or unenforceable" (Dkt. #33, p. 2). At the October 29, 2008, hearing, Defendants' counsel made the same admission orally (Dkt. #49, p. 76). Defendants do contend, however, that the agreement was modified at the April 2007 meeting between Plaintiff Augier and Defendants Dennis and Gross (*id.*).

The basis for a claim of unjust enrichment follows from a contract implied-in-law. This implied contract is "imposed by fiction of law" and is intended to enable justice to be accomplished even in cases where no contract was intended. *Cascaden v. Magryta*, 247 Mich. 267, 225 N.W. 511, 512 (1929). A contract may be implied in law where: "[1] there is a receipt of a benefit by a defendant from a plaintiff and [2] retention of the benefit is inequitable, absent reasonable compensation." *Matter of Estate of Lewis*, 168 Mich. App. 70, 423 N.W.2d 600, 603 (1988). An implied contract, which forms the basis for a claim of unjust enrichment, "cannot be enforced where the parties have made an express contract covering the same subject matter." *Scholz v. Montgomery Ward & Co.*, 437 Mich. 83, 468 N.W.2d 845, 849 (1991).

Plaintiffs have alleged in their Amended Complaint that, prior to its termination on July 18, 2006, an express agreement existed between the parties which addressed Plaintiff Trinc's licensing of the TRIG '765 Patent to Radial Wheel for the purposes of development of the patent and marketing (Dkt. #5, ¶¶ 16, 21, 24, and 29). At the hearing, Defendants stipulated on the record that although they contend the express agreement was modified at the April 2007, meeting between the parties, an express agreement existed without dispute (Dkt. #49, p. 76). Although it would be allowable for Plaintiffs to plead their unjust enrichment count in the alternative to their breach of express contract count if the existence of an express contract were

disputed by Defendants, such an alternative count cannot stand where, as is the case here, Defendants do not dispute that an express contract covering the disputed subject matter exists. As a matter of Michigan law, therefore, Plaintiffs' pre-termination claim for unjust enrichment must be dismissed.

As to Plaintiffs' post-termination claim for unjust enrichment, Plaintiffs state that "Defendants admit that they continued using the Trinc patent for their own benefit after Trinc terminated the patent licensing agreements"(Dkt. #47, p. 1). Plaintiffs' statement is based upon Defendants' execution of an Agreement of Intent with Ukrainian tire manufacturer, Rosava. As noted above, this "letter of intent" was non-binding and was intended by Radial Wheel as a first step toward securing a more binding and definite agreement with Rosava in the future (Dkt. #25, Ex. B, ¶ 13). When the document was executed, it was the expectation and hope of Radial Wheel that the dispute between Plaintiffs and Defendants could be resolved so that Radial Wheel would eventually have ownership of, or at least permission to use, the '765 Patent in order to fuel a final and binding agreement with Rosava. The dispute between Plaintiffs and Defendants was not resolved and Defendants took no further steps with regard to the letter of intent (*id.* at ¶¶ 15-16).

Plaintiff's brief also ignores Defendants' contention that most of the Defendants' efforts with Rosava was to negotiate the fourteen page "Distributor Agreement" (also dated July 12, 2007) under which Radial Wheel hoped to make substantial money with respect to outsourcing its purchase of Rosava manufactured tires which would be sold in the United States (Dkt. #50, Ex. A). Moreover, Defendants contend that this outsourcing strategy was something that Mr. Augier knew about and tacitly consented to long before the July 12, 2007 meeting. For example,

in paragraph 1 of the April 6, 2007, letter from Mr. Gross to Mr. Augier, Mr. Gross mentioned Mr. Augier's "responsibilities" with respect to both the TRIG project and the "outsourcing" of tires from Rosava Tire Company (Dkt. #50, Ex. B). On April 23, 2007, Mr. Gross sent an email to Mr. Augier stating that ". . . [w]e are scheduling Rosava ASAP." (Dkt. #50, Ex. C). In Mr. Dennis' letter to Mr. Augier of June 5, 2007, Mr. Augier was told that the chairman of the Board from Rosava was to come to the U.S. on July 10, 11, 12, 2007 (Dkt. #50, Ex. D). There is nothing in the record to suggest that Mr. Augier demanded that Defendants not meet with Rosava.

The Michigan Supreme Court has emphasized that implying a contract-in-law to prevent unjust enrichment "should be approached with some caution." *Dumas v. Auto Club Insur. Ass'n*, 437 Mich. 521, 473 N.W.2d 652, 663 (1991). The essential elements of such a claim are: "(1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain." *Id.* Although an unjust enrichment claim may stand in some circumstances where a defendant inequitably retains a benefit following the termination of an express contract, *see Daimeler-Chrysler Services North America, LLC v. Summit National, Inc.*, 289 Fed. Appx. 916, 925-26, 2008 WL 3889747 (6th Cir. 2008), a plaintiff bringing such a claim must still make a showing that the two elements of unjust enrichment are satisfied. *Id.* at 925. Here, Plaintiffs have failed to show either that Defendants received a benefit from Plaintiffs or, if a benefit was conferred, that it would be unjust for Defendants to retain it.

**(A.)** *Defendants Received No Benefit from Plaintiffs*

Plaintiffs rely on the existence of Defendant Radial Wheel's Agreement of Intent with Rosava as proof that some benefit was conferred on Defendants by Plaintiffs. Plaintiffs make

16

this assertion despite evidence in the Affidavit of Dennis that nothing of value flowed to Defendants as a result of the Agreement of Intent. Plaintiffs contend that Defendants somehow benefitted from the continued use of the TRIG '765 Patent, but fail to show how the patent was used by Defendants or specifically how Defendants benefitted. Here, it is undisputed that a working prototype of the TRIG patent does not exist. Defendants apparently had optimistically hoped that some resolution of the dispute between Plaintiffs and Defendants could be reached so that work on development of the patent could begin with Rosava. It was with this intention that Defendant Radial Wheel entered into the non-binding Agreement of Intent with Rosava.

Equally insufficient is Plaintiffs' claim that payments from Radial Wheel to Defendants Dennis and Gross were a benefit conferred on those Defendants by Plaintiffs. These payments, flowing from Radial Wheel and not from Plaintiffs, were made in exchange for marketing, business development and management activities performed by Dennis and Gross in furtherance of Radial Wheel's "outsourcing" business.[3] No sufficient nexus has been demonstrated between Plaintiffs and the payments to allow Plaintiffs to establish that the payments were a "benefit" that Plaintiffs conferred upon Defendants Dennis and Gross.

In the case of *Rothschild v. Ford Motor Co.*, 2 F. Supp.2d 941 (E.D. Mich. 1998), the District Court for the Eastern District of Michigan considered an unjust enrichment claim in the

---

[3] According to Steven Gross, he and Dennis decided to make certain "guaranteed payments" to Gross and Dennis to compensate them for the "time and effort" that was being spent on the Rosava "outsourcing" contract. Plaintiff Augier was not participating, but "had decided to fight instead of participate" (Dkt. #33, Ex. A, pp. 48-49). While Mr. Augier is still a member of Radial Wheel, and would share in the revenues that come from selling Rosava product, Mr. Gross characterized him as ". . . fighting the company and us and he's not participating" (*id.* at 54). Gross further indicates that this "outsourcing revenue" is completely unrelated to the TRIG patent or the prototype (*id.* at 168).

17

context of a patent infringement case. Plaintiffs in that case alleged that the defendant had been unjustly enriched by using the plaintiffs' proprietary information. As proof that a benefit had been received by defendant, plaintiffs argued that without plaintiffs' proprietary information, defendant could not have built "reclaimer of this type as quickly as it did." Judge Gadola held that plaintiffs had not proffered evidence tending to establish that a benefit was conferred on the defendant from its alleged use of plaintiffs' information. *Id*. at 951-952. Judge Gadola concluded that plaintiffs' failure to present evidence establishing the benefit element of unjust enrichment mandated entry of summary judgment for defendant on plaintiffs' unjust enrichment claim. *Id*. at 952. As in *Rothschild*, Plaintiffs in this case have failed to prove the existence of the first element of an unjust enrichment claim in that they have made no showing of an actual benefit flowing from Plaintiffs to Defendants.

**(B.)** *No Inequity*

In order for Plaintiffs' claim of post-termination unjust enrichment to survive Defendants' Motion for Summary Judgment, Plaintiffs also have the burden of showing Defendants' retention of the perceived benefit without compensating Plaintiffs would be unjust or inequitable. Although Defendants have shown that no benefit passed from Plaintiffs during the post-termination period, "Even where a person has received a benefit from another, he is liable to pay therefor[e] only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Dumas*, 473 N.W.2d at 663.

In the case of *Daimler-Chrysler Services North America, LLC v. Summit National, Inc.*, 289 Fed. Appx. 916 (6th Cir. 2008) (unpublished) the Sixth Circuit Court of Appeals held that where defendant continued using plaintiff's proprietary software following termination of a

18

usage agreement, that the element of inequity was not shown by plaintiffs since the software had no marketable value to plaintiff. In *Summit*, even though there was a clear benefit gained by defendant in continuing to use plaintiff's software, the Sixth Circuit held that plaintiff had not proven how defendant's failure to compensate plaintiffs for the continued use of an obsolete product with no value in the extrinsic market was unjust. *Id*. at 925-26. The case at bar is similar in that even if Plaintiffs could make a showing of a benefit conferred upon Defendants, there has been no showing that retention of this perceived benefit would be inequitable.

In consideration of the fact that Defendants have stipulated on the record that an express patent licensing agreement existed prior to July 18, 2006 (date of termination), Plaintiffs' pre-termination claim for unjust enrichment must fail as a matter of Michigan law. Plaintiffs' assertion that an unjust enrichment claim exists for the period subsequent to termination must also fail because Plaintiffs have failed to make a showing that either a benefit was conferred on Defendants by Plaintiffs or that a Defendants' retention of such a perceived benefit would be unjust or inequitable.

Accordingly, **IT IS RECOMMENDED** that Defendants Gross and Dennis **BE GRANTED** summary judgment as to Counts I, II and III, and in connection with any claim against them by Plaintiffs to recover costs, damages or attorneys fees. It is **FURTHER RECOMMENDED** that Radial Wheel **BE GRANTED** summary judgment on Count II and Count III of the Amended Complaint.

### III. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendants' Motion for Partial Summary Judgment be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of

19

service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

s/Steven D. Pepe
United States Magistrate Judge

Dated: February 25, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 25, 2009.

S/V. Sims
Case Manager